ORIGINAL

AO 93 (Rev. 12/09) Search and Seizure Warrant  (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. |
| Information associated with accounts identified as | ) | |
| tenshinbugeisha@gmail.com and soloanna@gmail.com | ) | |
| that is stored at premises controlled by Google, Inc. | ) | |

**15-0168M**

2017 JUL 12 PM 3:01
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CA.
LOS ANGELES
BY:_____
FILED

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Northern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

  See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

  See Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.  Such affidavit is incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before      14 days from the date of its issuance
                                                                                                          *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.      ☐ at any time in the day or night as I find reasonable cause has been
                                                                      established.

You must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
on duty at the time of the return through a filing with the Clerk's Office.
                          *(name)*

IT IS FURTHER ORDERED that the Provider named in Attachment A shall comply with the further orders set forth in Attachment B, and shall not notify any person, including the subscriber(s) of each account identified in Attachment A, of the existence of the warrant.

Date and time issued:   2-6-2015    11:10 am _____      _____
                                                                                                        *Judge's signature*

City and state:   Los Angeles, California _____      Alka Sagar, U.S. Magistrate Judge
                                                                                          *Printed name and title*

AUSA:Christopher C. Kendall

AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>15- 168M | Date and time warrant executed:<br>2/6/2015 | Copy of warrant ~~and inventory~~ left with:<br>USLAWENFORCEMENT @ GOOGLE.com |
| Inventory made in the presence of :     N/A | | |

Inventory of the property taken and name of any person(s) seized:
[Please provide a description that would be sufficient to demonstrate that the items seized fall within the items authorized to be seized pursuant to the warrant (e.g., type of documents, as opposed to "miscellaneous documents") as well as the approximate volume of any documents seized (e.g., number of boxes).  If reference is made to an attached description of property, specify the number of pages to the attachment and any case number appearing thereon.]

NUMEROUS   EMAILS   PROVIDED   BY   GOOGLE   INC.

**Certification** (by officer present during the execution of the warrant)

I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.

Date:   7/12/17

_____
Executing officer's signature

SPECIAL  AGENT  TYSON  WALCHT
_____
Printed name and title

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant applies to information associated with the accounts identified as tenshinbugeisha@gmail.com ("SUBJECT ACCOUNT NO. 1") and soloanna@gmail.com ("SUBJECT ACCOUNT NO. 2") (collectively, the "SUBJECT ACCOUNTS") that are stored at premises controlled by Google, Inc. (the "PROVIDER"), a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, California 94043.

<u>ATTACHMENT B</u>

ITEMS TO BE SEIZED

I. <u>SEARCH PROCEDURE</u>

1.   The search warrant will be presented to personnel of Google, Inc. (the "PROVIDER"), who will be directed to isolate the information described in Section II below.

2.   To minimize any disruption of service to third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the information described in Section II below.

3.   The PROVIDER's employees will provide in electronic form the exact duplicate of the information described in Section II below to the agent who serves the search warrant.

4.   With respect to contents of wire and electronic communications produced by the PROVIDER (hereafter, "content records," see Section II.10.a below), law enforcement agents and/or individuals assisting law enforcement and acting at their direction (the "search team") will examine such content records pursuant to search procedures specifically designed to identify items to be seized under this warrant.   The search shall extract and seize only the specific items to be seized under this warrant (see Section III below).   In conducting this search, the search team shall take notes regarding how it conducts the search.

5.   If the search team encounters immediately apparent contraband or other evidence of a crime outside the scope of the

items to be seized, the team shall immediately discontinue its search pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

6.   The search team will complete its search of the content records as soon as is practicable but not to exceed 60 days from the date of receipt from the PROVIDER of the response to this warrant.  If additional time is needed, the government may seek an extension of this time period from the Court within the original 60-day period.

7.   Once the search team has completed its review of the content records and created copies of the items seized pursuant to the warrant, the original production from the PROVIDER will be sealed -- and preserved by the search team for authenticity and chain of custody purposes -- until further order of the Court.  Thereafter, the search team will not access the data from the sealed original production which fell outside the scope of the items to be seized absent further order of the Court.

8.   The special procedures relating to digital data found in this warrant govern only the search of digital data pursuant to the authority conferred by this warrant and do not apply to any search of digital data pursuant to any other court order.

9.   Pursuant to 18 U.S.C. § 2703(g) the presence of an agent is not required for service or execution of this warrant.

## II.   INFORMATION TO BE DISCLOSED BY THE PROVIDER

10.   To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, including any information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for each SUBJECT ACCOUNT listed in Attachment A:

a.   All contents of all wire and electronic communications associated with the SUBJECT ACCOUNTS, limited to that which occurred on or after August 1, 2013, including:

i.   All e-mails associated with the SUBJECT ACCOUNTS, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, and deleted e-mails, as well as all header information associated with each e-mail, and any related documents or attachments.

ii.   All records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNTS, including contacts with support services and records of actions taken.

b.   All user connection logs and transactional information of all activity relating to the SUBJECT ACCOUNTS described above in Section II.10.a, including all log files, dates, times, durations, data transfer volumes, methods of connection, IP addresses, ports, routing information, dial-ups, and locations.

c.   All subscriber information pertaining to the SUBJECT ACCOUNTS, including the date on which the account was created, the length of service, the IP address used to register the account, the subscriber's full name(s), screen name(s), other account names or e-mail addresses associated with the account, telephone numbers, physical addresses, and other identifying information regarding the subscriber, the types of service utilized, account status, account settings, login IP addresses associated with session dates and times, as well as means and source of payment, including detailed billing records.

## III.  INFORMATION TO BE SEIZED BY THE GOVERNMENT

11.   For each SUBJECT ACCOUNT listed in Attachment A, the search team may seize:

a.   All information described above in Section II.10.a that constitutes evidence, contraband, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 1546 (Visa Fraud), 1028(a)(7) (Access Device Fraud), and 1343 (Wire Fraud), those violations involving Alex Smirnoff or Anna Solodovnikova and occurring after August 1, 2013, namely:

i.   Information relating to who created, accessed, or used the SUBJECT ACCOUNTS, including records about their identities and whereabouts.

ii.   Communications between the SUBJECT ACCOUNTS and other email accounts involving passports, birth certificates, other government identifications, bank accounts,

wire transfer instructions, and mailing addresses, relating to the trafficking of immigration visas and identity theft.

> b.    All records and information described above in Sections II.10.b and II.10.c.

IV.   **PROVIDER PROCEDURES**

12.   IT IS ORDERED that the PROVIDER shall deliver the information set forth in Section II within 10 days of the service of this warrant.   The PROVIDER shall send such information to:

> Special Agent Tyson Walch
> 16921 Parthenia Street, Suite 101
> Northridge, CA 91343
> Phone: (818) 672-2325
> Fax: (818) 672-2325
> tyson.a.walch@ice.dhs.gov

13.   IT IS FURTHER ORDERED that the PROVIDER shall provide the name and contact information for all employees who conduct the search and produce the records responsive to this warrant.

14.   IT IS FURTHER ORDERED that the PROVIDER shall not notify any person, including the subscriber(s) of each account identified in Attachment A, of the existence of the warrant.

## AFFIDAVIT

I, Tyson Walch, being duly sworn, declare and state as follows:

### I.   INTRODUCTION

1.    I am a Special Agent ("SA") with the Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") in Los Angeles, California, and I have been so employed since May 2010.  I am currently assigned to the Office of the Resident Agent in Charge, Northridge ("HSI Northridge") Group 1, where I have investigated and assisted other agents in a wide range of criminal investigations, including, but not limited to; identity theft, access device fraud, bank fraud, mail fraud, wire fraud, trafficking counterfeit goods, trafficking narcotics, trafficking counterfeit monetary instruments, and possession and distribution of child pornography.

2.    During my career, I have been involved in numerous investigations involving identity theft, identification document fraud, and immigration fraud.  I attended a 12-week Criminal Investigator course at the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training relating to these offenses.  I also attended a 12-week training course at the United States Secret Service Training Center in Beltsville, Maryland, where I received training relating to document fraud and identity theft.

3.    I make this affidavit in support of an application for a search warrant for information associated with the accounts identified as tenshinbugeisha@gmail.com ("SUBJECT ACCOUNT NO.

1") and soloanna@gmail.com ("SUBJECT ACCOUNT NO. 2")

(collectively, the "SUBJECT ACCOUNTS") that are stored at

premises controlled by Google, Inc. (the "PROVIDER"), a provider

of electronic communication and remote computing services,

headquartered at 1600 Amphitheatre Parkway, Mountain View,

California 94043.[1]  The information to be searched is described

in the following paragraphs and in Attachment A.  This affidavit

is made in support of an application for a search warrant under

18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A) and 2703(d)

to require the PROVIDER to disclose to the government copies of

the information (including the content of communications)

described in Section II of Attachment B.  Upon receipt of the

information described in Section II of Attachment B, law

enforcement agents and/or individuals assisting law enforcement

and acting at their direction will review that information to

locate the items described in Section III of Attachment B.

Attachments A and B are incorporated herein by reference.

---

[1] Because this Court has jurisdiction over the offense(s)
being investigated, it may issue the warrant to compel the
PROVIDER pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A).
See 18 U.S.C. §§ 2703(a) ("A governmental entity may require the
disclosure by a provider . . . pursuant to a warrant issued
using the procedures described in the Federal Rules of Criminal
Procedure . . . by a court of competent jurisdiction") and 2711
("the term 'court of competent jurisdiction' includes -- (A) any
district court of the United States (including a magistrate
judge of such a court) or any United States court of appeals
that -- (i) has jurisdiction over the offense being
investigated; (ii) is in or for a district in which the provider
of a wire or electronic communication service is located or in
which the wire or electronic communications, records, or other
information are stored; or (iii) is acting on a request for
foreign assistance pursuant to section 3512 of this title").

4.   As described more fully below, I respectfully submit there is probable cause to believe that the information associated with the SUBJECT ACCOUNTS constitutes evidence, contraband, fruits, or instrumentalities of criminal violations of Title 18, United States Code, Sections 1546 (Visa Fraud), 1028(a)(7) (Access Device Fraud), and 1343 (Wire Fraud).

5.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other agents and witnesses.   This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.   Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

6.   Other than what has been described herein, to my knowledge the United States has not attempted to obtain the contents of the SUBJECT ACCOUNTS by other means.

## II. SUMMARY OF INVESTIGATION

7.   HSI is currently investigating a visa fraud scheme operating in Los Angeles, California.   Alex Smirnoff, with the assistance of Anna Solodovnikova, has claimed to be an attorney named Alex Scott who is able to assist foreign nationals to obtain valid visas from the United States government.   In furtherance of this scheme, Smirnoff and Solodovnikova use the SUBJECT ACCOUNTS to communicate with their client/victims and with each other.

## III. STATEMENT OF PROBABLE CAUSE

8.   In September 2014, I and other HSI Special Agents encountered O.A., a foreign national, who was suspected of violating the terms of his F-1 student visa by remaining in the United States after his graduation from a university.  O.A. claimed that, even though his student visa had expired, he still had legal authorization to remain in the United States because he had been issued an H-1B visa.  To support this claim, O.A. used his cellular phone to retrieve an electronic image of what appeared to be an I-94 document in his name and which purported to show that O.A. had been issued an H-1B visa.

9.   On the same date, upon my examination of the image of the Form I-94, I observed that it bore O.A.'s name, an Alien Registration Number ("A-number"), and what appeared to be an official Customs and Border Protection ("CBP") stamp with a handwritten notification indicating that O.A. had an H-1B visa.

10.   On the same date, SA Loan McIntosh-Rupp queried the A-number from the image of O.A.'s scanned Form I-94 in immigration databases and discovered that the number corresponded to a foreign national named J.E.R., who resides in Wisconsin.

11.   On the same date, O.A. showed me a business card that identified "Alex Scott" ("Scott") as the managing director for a company named "Banzoku Solutions."  O.A. stated that the man who gave him this card helped him to obtain his H-1B visa.  The card listed two addresses for Banzoku Solutions: 11301 Olympic Boulevard, #312, Los Angeles, California 90064 ("Banzoku Address No. 1") and 4080 Paradise Road, Las Vegas, Nevada 89169

4

("Banzoku Address No. 2"). The card also listed Scott's email address as SUBJECT ACCOUNT NO. 1.

12. In late December 2014, I looked up Banzoku Address No. 1 and Banzoku Address No. 2 using Google and Google Maps. My query revealed that both addresses correspond to commercial properties in Los Angeles, California and Las Vegas, Nevada, each of which contains a UPS Store.

13. On January 9, 2015, I obtained the rental application from the UPS Store at Banzoku Address No. 1 for mailbox number 312. The rental application indicated that the mailbox was rented by Alex Smirnoff. Various business names were listed on the application, including "ABC Flex." Attached to the application was a photocopy of a Nevada driver license in the name of Alex Joshua Smirnoff. Smirnoff's home address on the Nevada driver license matched Banzoku Address No. 2 (the UPS Store in Las Vegas, NV).

14. On the same date, I reviewed the results of a National Comprehensive Report ("NCR") records check for Smirnoff. The NCR is a report generated by Thomson Reuters -- which is a company that consolidates public records, including addresses, driver licenses, property deed transfers, and corporate information, as well as some proprietary records. The only addresses for Smirnoff in the NCR were Banzoku Address No. 1 and No.2. (Note: the NCR included a 2003 link to a residential address in Nevada, but a separate query of this address revealed that numerous other occupants have resided at this address during the last 11 years since Smirnoff was last linked to it.)

15.   I know from my training and experience that those who commit fraud often go to great effort to insulate themselves from their fraud activities by concealing the locations of their true residences and businesses.   To this end, they commonly represent commercial mail drop box locations to be their business and residence addresses.

16.   On January 27, 2015, I interviewed O.A. in the presence of his attorney, where O.A. made the following statements:

    a.   In mid or late 2013, O.A. was concerned that his student visa was due to expire in February 2014.   An acquaintance referred O.A. to a woman named Anna Solod (later identified as Anna Solodovnikova).   The friend claimed that Solodovnikova had helped him obtain a new visa and instructed O.A. to use her email address, SUBJECT ACCOUNT NO. 2, to contact her.

    b.   Soon thereafter, O.A. sent an email to SUBJECT ACCOUNT NO. 2 requesting assistance with his visa troubles.   A person identifying herself as "Anna" responded.   "Anna" claimed that she was a legal assistant for an attorney named Alex Scott. O.A. agreed to meet with "Anna" and Alex Scott within a few days at a business building in the area of downtown Los Angeles.

    c.   A few days later, O.A. went to the agreed-upon location, where he met with Solodovnikova and a man identifying himself as Alex Scott (later identified as Alex Smirnoff). Smirnoff claimed to be an attorney specializing in immigration

law.   Smirnoff stated that in exchange for $7,000, he could help O.A. get an H-1B visa.

       d.   Following the meeting, Solodovnikova sent an email to O.A. from SUBJECT ACCOUNT NO. 2, wherein she identified the Bank of America account, belonging to a company called ABC Flex, to which O.A. should begin sending his monthly payments for his H-1B visa.   In the same email, she provided the Banzoku Address No. 1 as ABC Flex's business address.

       e.   On December 27, 2013, O.A. wire transferred $700 to ABC Flex at the Bank of America account specified by Solodnovnikova.

       f.   In February 2014, Solodovnikova sent an email to O.A. from SUBJECT ACCOUNT NO. 2 informing him that a company had successfully petitioned the United States government to "sponsor" his H-1B visa application.   Within a few days, Solodovnikova sent an email to O.A. from SUBJECT ACCOUNT NO. 2 with a pdf file attachment.   The pdf file contained a scan of an I-94 bearing O.A.'s name and identifying his visa status as H-1B.

       g.   O.A. showed me the Facebook profile of "Anna Solod," which contained photos of a female Caucasian in her late 20s or early 30s.   O.A. stated that the photos depicted the woman he knew as Anna Solod.

    17.   On January 26, 2015, Criminal Research Specialist ("CRS") Wendy Lawrence conducted queries of various law enforcement, State Department, and immigration databases for "Anna Solod."   CRS Lawrence found a record for a Russian

national, Anna Solodovnikova.  I examined a photograph from
Solodovnikova's file and observed that it matches the appearance
of the Facebook photos for "Anna Solod."  Furthermore,
Solodovnikova provided SUBJECT ACCOUNT NO. 2 as her email
address on her visa application.

18.   On January 29, 2015, I met with O.A. and his attorney.
In anticipation of this meeting, I prepared an array of six
photos from the Nevada Department of Motor Vehicles database --
one photo of Smirnoff and five photos of random men who
generally resembled Smirnoff's physical appearance.  I asked
O.A. if he recognized the man who identified himself as the
attorney Alex Scott in any of the photos.  O.A. selected
Smirnoff's photo, though he stated that he was "not absolutely
certain."

19.   On or around the same date, I reviewed the contents of
O.A.'s email mailbox, as recorded in a forensic image taken from
O.A.'s computer hard drive (Note: I and other HSI Special Agents
previously seized O.A.'s computer pursuant to a search warrant
issued by a United States Magistrate Judge on December 16,
2014).  I observed the following emails sent to O.A. from
SUBJECT ACCOUNT NO. 2:

a.   On or about August 26, 2013, "Anna" instructed
O.A. to meet her and an attorney to discuss his case at 333 S.
Alameda Street, Los Angeles, California 90013.

b.   On or about December 10, 2013, "Anna" instructed
O.A. to begin making installment payments via wire transfer to a
Bank of America bank account.

       c.   On or about March 29, 2014, "Anna" sent O.A. a pdf file containing an electronic image of a Form I-94. I observed that this Form I-94 matched the appearance of the Form I-94 shown to me by O.A. in September 2014.

       d.   On or about September 23, 2014, O.A. sent "Anna" an email describing his administrative arrest and release by HSI agents. Thereafter, a series of emails were exchanged between O.A. and "Anna" in which they discussed the details of O.A.'s arrest.

   20.  On or about January 29, 2015, I queried Smirnoff's name on the web sites for the State Bar of California and the State Bar of Nevada. Smirnoff's name was not listed as a member of either state bar.

## IV. BACKGROUND REGARDING E-MAIL AND THE PROVIDER

   21.  In my training and experience, I have learned that the PROVIDER provides a variety of online services, including e-mail, to the public. The PROVIDER allows subscribers to obtain e-mail accounts at the domain name gmail.com, like the SUBJECT ACCOUNTS. Subscribers obtain an account by registering with the PROVIDER. During the registration process, the PROVIDER asks subscribers to provide basic personal information. Therefore, the computers of the PROVIDER are likely to contain stored electronic communications and information concerning subscribers and their use of the PROVIDER's services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under

investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNTS.

22.  In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNTS.

23.  In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, e-mail providers often have records of the Internet Protocol ("IP") address used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP

address information can help to identify which computers or
other devices were used to access the SUBJECT ACCOUNTS.

24.   In my training and experience, e-mail account users
will sometimes communicate directly with an e-mail service
provider about issues relating to the account, such as technical
problems, billing inquiries, or complaints from other users.  E-
mail providers typically retain records about such
communications, including records of contacts between the user
and the provider's support services, as well records of any
actions taken by the provider or user as a result of the
communications.  In my training and experience, such information
may constitute evidence of the crimes under investigation
because the information can be used to identify the user(s) of
the SUBJECT ACCOUNTS.

25.   I know from my training and experience that the
complete contents of an e-mail account may be important to
establishing the actual user who has dominion and control of
that account at a given time.  E-mail accounts may be registered
in false names or screen names from anywhere in the world with
little to no verification by the service provider.  They may
also be used by multiple people.  Given the ease with which e-
mail accounts may be created under aliases, and the rarity with
which law enforcement has eyewitness testimony about a
defendant's use of an e-mail account, investigators often have
to rely on circumstantial evidence to show that an individual
was the actual user of a particular account.  Only by piecing
together information contained in the contents of an account may

an investigator establish who the actual user of an account was. Often those pieces will come from a time period before the account was used in the criminal activity. Limiting the scope of the search would, in some instances, prevent the government from identifying the true user of the account and, in other instances, may not provide a defendant with sufficient information to identify other users of the account. Therefore, the contents of a given account, including the e-mail addresses and messages sent to that account, often provides important evidence regarding the actual user's dominion and control of that account. For the purpose of searching for content demonstrating the actual user(s) of the SUBJECT ACCOUNTS, I am requesting a warrant requiring the PROVIDER to turn over all information associated with the SUBJECT ACCOUNTS with the date restriction included in Attachment B for review by the search team.

26.  Relatedly, the government must be allowed to determine whether other individuals had access to the SUBJECT ACCOUNTS. If the government were constrained to review only a small subsection of an e-mail account, that small subsection might give the misleading impression that only a single user had access to the account.

27.  I also know based on my training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as "lol" to express "laugh out loud"), or codewords (which require entire strings or series of e-mail conversations to determine their

true meaning) when discussing their crimes.  They can also
discuss aspects of the crime without specifically mentioning the
crime involved.  In the electronic world, it is even possible to
use pictures, images and emoticons (images used to express a
concept or idea such as a happy face inserted into the content
of an e-mail or the manipulation and combination of keys on the
computer keyboard to convey an idea, such as the use of a colon
and paren :) to convey a smile or agreement) to discuss matters.
"Keyword searches" would not account for any of these
possibilities, so actual review of the contents of an e-mail
account by law enforcement personnel with information regarding
the identified criminal activity, subject to the search
procedures set forth in Attachment B, is necessary to find all
relevant evidence within the account.

28.  As set forth in Attachment B, I am requesting a
warrant that permits the search team to keep the original
production from the PROVIDER under seal until the investigation
is completed and, if a case is brought, that case is completed
through disposition, trial, appeal, or collateral proceeding.

a.   I make that request because I believe it might be
impossible for the PROVIDER to authenticate information taken
from the SUBJECT ACCOUNTS as its business record without the
original production to examine.  Even if the PROVIDER kept an
original copy at the time of production (against which it could
compare against the results of the search at the time of trial),
the government cannot compel the PROVIDER to keep a copy for the
entire pendency of the investigation and/or case.  If the

original production is destroyed, it may be impossible for the PROVIDER to examine a particular document found by the search team and confirm that it was a business record of the PROVIDER's taken from the SUBJECT ACCOUNTS.

b.   I also know from my training and experience that many e-mail accounts are purged as part of the ordinary course of business by providers.  For example, if an e-mail account is not accessed within a specified time period, it -- and its contents -- may be deleted.  As a consequence, there is a risk that the only record of the contents of an e-mail account might be the production that a provider makes to the government, for example, if a defendant is incarcerated and does not (perhaps cannot) access his or her e-mail account.  Preserving evidence, therefore, would ensure that the government can satisfy its Brady obligations and give the defendant access to evidence that might be used in his or her defense.

### V.   REQUEST FOR NON-DISCLOSURE

29.   Pursuant to 18 U.S.C. § 2705(b), I request that the Court enter an order commanding the PROVIDER not to notify any person, including the subscriber(s) of the SUBJECT ACCOUNTS, of the existence of the warrant because there is reason to believe that such notification will result in the destruction of or tampering with evidence, or otherwise seriously jeopardize the investigation.  The current investigation set forth above is not public, and I know, based on my training and experience, that those who commit fraud often will destroy evidence if they learn they are under investigation by law enforcement authorities.  In

addition, if the PROVIDER or other person notifies the targets of the investigation that a warrant has been issued for the SUBJECT ACCOUNTS, the fraud suspects might further mask their activity and seriously jeopardize the investigation.

## VI. CONCLUSION

30.  Based on the foregoing, I request that the Court issue the requested search warrant.


_____
Tyson Walsh, Special Agent
Homeland Security
Investigations


Subscribed to and sworn before me
this 6th day of February, 2015.


_____
HONORABLE ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE